IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
August 9, 2016 Session

## CHARLES BRADFORD STEWART v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**No. 40700425          John H. Gasaway, III, Judge**
_____

**No. M2015-02449-CCA-R3-PC – Filed June 20, 2017**
_____


The State appeals from the post-conviction court's grant of post-conviction relief to Petitioner, Charles Bradford Stewart. Petitioner was convicted of vehicular assault and originally sentenced to serve twelve years as a career offender, with split confinement of one year in jail and eleven years in community corrections. The State appealed the sentence on the basis that community corrections was erroneously granted. This court reversed and remanded. *State v. Charles B. Stewart*, No. M2010-01948-CCA-R3-CD, 2011 WL 4794942, at *1 and *3 (Tenn. Crim. App. Oct. 11, 2011). Upon remand the trial court sentenced Petitioner to serve the entirety of the twelve-year sentence by incarceration. This Court affirmed. *State v. Stewart*, 439 S.W.3d 906, 907-08 (Tenn. Crim. App. 2013). Petitioner timely filed, *pro se*, a petition for post-conviction relief. Counsel was appointed, and Petitioner subsequently filed a "corrected" petition. Following an evidentiary hearing, the post-conviction court granted relief. After review, we reverse the judgment of the post-conviction court and reinstate the judgment of conviction.

### Tenn. R. App. P. 3 Appeal as of Right;
### Judgment of the Criminal Court Reversed and Remanded

THOMAS T. WOODALL, P.J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and J. ROSS DYER, JJ., joined.

Herbert H. Slatery III, Attorney General and Reporter; James E. Gaylord, Senior Counsel; John Wesley Carney, Jr., District Attorney General; and Arthur Bieber, Assistant District Attorney General, for the appellant, State of Tennessee.

B. Nathan Hunt, Clarksville, Tennessee, for the appellee, Charles Bradford Stewart.

**OPINION**

At the outset we address the unusual procedure utilized by the post-conviction court in reaching its ruling on the post-conviction petition in this case. Only two witnesses testified at the post-conviction hearing – Petitioner and his trial counsel. Trial counsel represented Petitioner pre-trial, during the trial, through Petitioner's first direct appeal, and through a motion for new trial hearing following disposition of the first appeal. The sole issue in the first appeal was the State's challenge to the sentence of split confinement, with community corrections after one year of incarceration. *See State v. Charles B. Stewart*, 2011 WL 4794942. No exhibits were introduced at the post-conviction hearing. It appears that the post-conviction court declined to accept the State's and Petitioner's requests for the Court to take the transcripts and copies of motions from the trial which were tendered at the conclusion of the post-conviction hearing.

Specifically, the following transpired after Petitioner rested his case in the post-conviction hearing:

> [PETITIONER'S COUNSEL]: . . . We have that [trial] transcript. The initial sentencing hearing on August 10[th] of 2010, we have that transcript for the court as well as pro se motions including his motion for new trial. If we could pass those forward, Your Honor.
>
> THE COURT: You can but - - but wait just a minute.
>
> [PETITIONER'S COUNSEL]: Yes, sir.
>
> [PROSECUTOR]: Okay.
>
> THE COURT: Go ahead.
>
> [PROSECUTOR]: State joins in the motion to pass these transcripts up.
>
> THE COURT: Okay. But I - - is there anything else you want to say?
>
> [PROSECUTOR]: I think the only thing the State would want to say is it looks like the blood alcohol motion is in here. I think we do not have the transcript of the new trial motion on the merits. And

we're going to have to check on that. We may be missing just one transcript here.

THE COURT: Okay. But before you - - okay, just hold on. Anything else?

[PROSECUTOR]: The State does not wish to introduce anything other than the transcripts.

THE COURT: All right. But the reason that I'm hesitating taking that right now is because, [Petitioner's Counsel], using that I want you to draft me an order that is in the form of a finding of fact and a conclusion of law, and draft it as if I'm granting you relief. I don't know whether I'm going to grant relief or not. But if you present me with an order that's drafted in that way I will be able to refer to what you say in your order, and X out what I disagree with or . . . you see what I'm saying?

[PETITIONER'S COUNSEL]: I do, Your Honor.

[PROSECUTOR]: Makes sense, Your Honor. It's - - it's really rather complex.

THE COURT: This case - - well, do that. And I know that's a lot of work, but - - but . . .

[PROSECUTOR]: The only thing - -

THE COURT: I'm thinking very seriously about this, and I want you to draft that as if I'm going to grant it but then I'm going to take out my pen and I'm going to - - I'm going to reform it in my own way, and the outcome may be granted and the outcome may be denied.

. . .

[PROSECUTOR]: I would just ask to - -

THE COURT: Yeah, you copy - -

[PROSECUTOR]: For a copy.

3

THE COURT: You copy [Prosecutor] now, because - -

[PETITIONER'S COUNSEL]: Sure.

THE COURT: He wants to take out his pen too, so.

[PETITIONER'S COUNSEL]: I understand.

[PROSECUTOR]: Well, it's - - it's the Court's red pen that counts. In case something comes up.

THE COURT: I know it is, but that doesn't mean you don't get to use your blue pen to cull - - to bring it to my attention, what you think about it.

[PROSECUTOR]: The only thing we would ask, Your Honor, is if there's missing pages in a transcript or - - we think it's correct and complete; if there's some sort of problem, if the Court would please let Counsel know.

THE COURT: Oh, I will, I will.

[PETITIONER'S COUNSEL]: Your Honor, can I retain - - should I retain these for now?

THE COURT: Yes. And then based on what you said this original petition is really - - it's - - it's super[s]eded by this ["corrected" petition for post-conviction relief].

[PETITIONER'S COUNSEL]: I believe that's accurate, Your Honor.

THE COURT: Okay.

[PETITIONER'S COUNSEL]: I believe that's accurate.

THE COURT: And then you do that, and submit that to me, and - - and we'll go from there.

Subsequently, Petitioner's counsel submitted a proposed findings of fact and conclusions of law, but later filed an amended proposed findings of fact and conclusions of law. The appellate record indicates that the State filed no objections to Petitioner's

4

findings of fact and conclusions of law, in its original form or as amended. Approximately three weeks later, the post-conviction court filed the order granting post-conviction relief. The language in the order as to the court's findings of fact and conclusions of law are identical (it appears to be word for word) to Petitioner's amended proposed findings of fact and conclusions of law. The order granting relief is set forth herein:

The Court hereby finds as follows:

## FINDINGS OF FACT

1. On July 19, 2004, Petitioner was involved in a traffic accident.

2. On February 28, 2005, warrants were issued for Petitioner's arrest, charging him with vehicular assault and violation of the financial responsibility law and said warrants were served on Petitioner on May 17, 2005.

3. On December 5, 2005, the Montgomery County Grand Jury returned an indictment charging Petitioner with reckless endangerment, vehicular assault, and violation of the financial responsibility law.

4. On March 6, 2007, the Montgomery County Grand Jury returned a superseding indictment charging Petitioner with reckless endangerment, vehicular assault, violation of the financial responsibility law, aggravated assault by use of a deadly weapon (the vehicle Petitioner was operating), and aggravated assault by causing serious bodily injury.

5. On August 10, 2007, the State filed notice seeking to have Petitioner sentenced as a career offender, if convicted.

5

6. Counts 2 (vehicular assault) and 4 (aggravated assault by use of a deadly weapon) were tried by a jury on May 17-18, 2010. Following trial, Petitioner was found guilty by a jury of both counts as charged.

7. On August 10, 2010, a sentencing hearing was conducted and the trial court took the matter under advisement.

8. On August 12, 2010, the trial court merged count 4 into count 2 and imposed a twelve-year sentence with one year to be served in the Montgomery County Jail and the balance of the sentence of eleven (11) years to be served on community corrections.

9. The State appealed the Court's sentencing of Petitioner and on October 11, 2011, the Court of Criminal Appeals rendered its opinion and judgment reversing the trial court's sentence and remanding the case for further proceedings.

10. On December 7, 2011, the trial court resentenced Petitioner to twelve (12) years in the Tennessee Department of Correction[ ].

11. Following resentencing, Petitioner appealed and the Court of Criminal Appeals upheld the trial court's sentencing of Petitioner as set forth above.

12. On July 7, 2014, Petitioner filed a timely petition for post-conviction relief with this court and on November 25, 2014, attorney B. Nathan Hunt was appointed to represent Petitioner regarding his petition for post-conviction relief.

13. On March 30, 2015, the Petitioner filed a "corrected" petition for post-conviction relief.

14.     On May 13, 2015, an evidentiary hearing was conducted regarding the petition and "corrected" [petition] for post-conviction relief.

15.     At the evidentiary hearing, **Petitioner testified as follows**: (emphasis added)

(a)     That his trial counsel, [          ], only met with Petitioner 4-5 times prior to his jury trial.

(b)     That his conviction was based on use of evidence gained pursuant to an unconstitutional search and seizure.

i.      Officer Michael Caver did not show reasonable grounds to believe that Petitioner was operating a motor vehicle while under the influence. However, Petitioner's trial counsel failed to file a motion to suppress the evidence gained pursuant to the unconstitutional search and seizure.

(c)     That the Tennessee Bureau of Investigation's ("TBI'') official toxicology report was illegal evidence because the State failed to preserve the blood sample or provide a valid chain of custody.

i.      Petitioner's blood sample was destroyed before Petitioner's preliminary hearing, indictment, and arraignment. This was done without notice to Petitioner, leaving him unable to obtain comparable evidence from said sample and leaving Petitioner no other means to obtain evidence that could have possessed exculpatory value.

ii.     Petitioner passed the field sobriety tests administered by Officer Caver at the scene and was not arrested and was allowed to leave without any citations issued.

iii.    The blood sample was compromised due to an invalid chain of custody.

(d)     That he received ineffective assistance of counsel at the trial and appellate stages.

i.      Trial counsel failed to file a pre-trial motion requesting that

7

Petitioner's blood sample taken on July 19, 2004 be made available to Petitioner for comparative testing at Petitioner's expense.

ii. Trial counsel failed to investigate and present to the court all the grounds why the TBI toxicology report should have been excluded.

iii. Trial counsel failed to file a motion to dismiss the indictment of aggravated assault.

iv. Trial counsel failed to adequately use exculpatory evidence at trial.

v. Trial counsel prejudiced the Petitioner with statements to the jury in counsel's closing arguments by misquoting Officer Caver.

vi. Trial counsel failed to cross-examine the paramedic at trial regarding the effects cocaine has on a person's pupils when a person is intoxicated by the drug.

vii. Trial counsel failed to cross-examine Cynthia Mallard, who was also involved in the accident at issue, and would have testified regarding her actions and contributions to the accident and would have also refuted the testimony of the State's other witnesses.

viii. Trial counsel failed to investigate and present evidence to impeach the State's statements and challenge the proof of reckless aggravated assault.

ix. Trial counsel failed to present an expert witness to impeach toxicologist's testimony introduced by the State.

x. Trial counsel failed to introduce evidence that Petitioner suffered from bipolar disorder and to show how Petitioner's bipolar disorder would have affected his behavior on the day in question.

xi. Trial counsel failed to protect Petitioner's due process rights when he advised Petitioner to withdraw his motion for a new trial.

xii. Petitioner's counsel on appeal, Roger E. Nell, failed to protect Petitioner's 14th Amendment due process rights when he

8

conceded on the second appeal that Petitioner was likely procedurally barred from raising certain issues in the second appeal by failing to raise said issues in the first appeal, which was initiated by the State, but requested the Court to consider Petitioner's claims anyway.

## CONCLUSIONS OF LAW

16.     For a petitioner to prevail on an ineffective assistance of counsel claim, a petitioner must show two (2) components as set forth by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 690 (1984). A petitioner must meet the requirements of showing that counsel's performance was deficient and in order to satisfy this requirement a petitioner must show that counsel made errors serious enough to result in a deprivation of petitioner's Sixth Amendment right to counsel. *Id.* at 691. A petitioner must also show that there is a reasonable probability that but for counsel's error the result of the proceeding would have been different. *Id*. at 694. In other words, a petitioner must show a "reasonable probability sufficient to undermine confidence in the outcome".

17.    In *Baxter v. Rose*, 523 S.W. 2d 930 (Tenn. 1975), the Tennessee Supreme Court held that "[d]efense counsel must perform at least as well as lawyers with ordinary training and skill in criminal law and must conscientiously protect his client's interests, undeflected by conflicting considerations. Defense counsel must investigate all apparently substantial defenses available to the Defendant and must assert them in a timely and proper manner."

18.    The Court finds that Petitioner has met his burden under *Strickland* to prevail on an ineffective assistance of counsel claim for the following reasons:

(a)    Trial counsel failed to file a pre-trial motion requesting that the blood sample taken from Petitioner on July 19, 2004 be made available to Petitioner for comparative testing at a State approved laboratory at the defense's expense, to establish the sample's identity through DNA testing and to challenge the alleged contents recorded on the TBI's Official Toxicology Report. Had trial counsel filed the appropriate motions the State would not have been able to produce the blood sample because it was destroyed before Petitioner was notified of its existence making the Official Toxicology Report invalid as evidence for use to support the indictment of vehicular assault and that indictment would have been dismissed because the report would have been excluded or suppressed under *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999).

In *United States v. Nixon*, 418 U.S. 683 (1974), the Supreme Court spoke of the need for discovery in the adversary system, holding:

We have elected to employ an adversary system of criminal justice in which the parties contest all issues before a court of law. The need to develop all relevant facts in the adversary system is both fundamental and comprehensive. The ends of criminal justice would be defeated if judgments were to be founded on a partial or speculative presentation of the facts. The very integrity of the judicial system and public confidence in the system depend on full disclosure of all the facts within the framework of the rules of evidence.

In *Ferguson,* 2 S.W.3d at 912, the Tennessee Supreme Court adopted a balancing approach for courts to use to determine when the loss or destruction of evidence has deprived a defendant of his fundamental right to a fair trial. *Id*. at 917. Under this approach, the first step is to determine whether the State had a duty to preserve the evidence. As a general rule, ["]the State has a duty to preserve all evidence subject to discovery and inspection under Tenn. R. Crim, P. 16, or other applicable law." *Id*. If the proof shows that the State had a duty to preserve the evidence, and that the State failed in its duty, the court must then consider the following factors which bear upon the consequences of the State's breach of its duty: (1) the degree of negligence involved; (2) the significance of the destroyed evidence, considered in light of the probative value and reliability of

secondary or substitute evidence that remains available; and, (3) the sufficiency of the other evidence used to support the conviction. *Id.* If the court concludes, after consideration of all the factors, that a trial without the missing evidence would not be fundamentally fair, the court has the option, of dismissing the charges against the defendant, issuing a special jury instruction on the significance of the missing evidence, or taking any other steps necessary to ensure a fair trial. *Id.*

(b)     Trial counsel failed to investigate and present to the court all the legal grounds why the TBI Official Toxicology Report should be excluded or suppressed in his pre-trial suppression motion and had trial counsel done so the court would have excluded or suppressed the TBI Toxicology Report and the indictment for vehicular assault would have been dismissed.

(c)     Trial counsel failed to cross-examine Paramedic Hightower to question her regarding the effects cocaine has on a person's pupils when a person is intoxicated by the drug. Had trial counsel adequately cross-examined Paramedic Hightower counsel would have inquired about the effects of cocaine on an individual's pupils and her testimony would have raised reasonable doubt as to Petitioner's alleged intoxication and the outcome of the trial would have been different.

(d)     Trial counsel failed to adequately use exculpatory evidence at trial. Trial counsel should have made the Tennessee Uniform Traffic Crash Report an exhibit at trial for impeachment purposes.   Trial counsel had possession of said report at trial, but failed to make it an exhibit. The report was identified by Officer Caver at trial and in the report Officer Caver had marked "no contributing actions for Driver 1 (Petitioner)." At trial, counsel asked Officer Caver if he remembered marking Petitioner's driving actions in the report and Officer Caver testified that he marked in the report that Petitioner was following improperly and careless or erratic driving, which was not consistent with the report and trial counsel's failure to use the report to impeach Officer Caver was ineffective assistance of counsel pursuant to *Strickland.* Had trial counsel used the report to impeach the testimony of Officer Caver it would have raised reasonable doubt that Petitioner acted recklessly or was intoxicated and the outcome of the trial would have been different.

(e)     Trial counsel prejudiced the Petitioner with his statements to the jury in

11

counsel's closing arguments by misquoting Officer Caver.

(f)     Trial counsel failed to investigate and present evidence to impeach the State's statements and challenge the alleged proof of reckless aggravated assault. Officer Caver's testimony regarding the circumstances of the accident was conflicting and inconsistent. However, trial counsel failed to present facts to impeach Officer Caver's testimony and also present facts that would have raised reasonable doubt that the Petitioner acted recklessly and had trial counsel done so the outcome of the trial would have been different.

(g)     Trial counsel failed to present an expert witness to impeach the toxicologist's testimony at trial. The toxicologist testified that finding cocaine in the blood sample means that a person's [sic] used cocaine within the last three hours. Specifically, "well, the two hours work to the benefit of the subject, so it's reasonable to assume that the cocaine was used within an hour before that accident". This testimony was misleading and prejudicial and was designed to persuade the jury into believing the Petitioner was intoxicated at the time of the accident and was not based on facts.

There was no specific type of cocaine metabolites recorded on the toxicology report and nothing in the record indicating how much cocaine the Petitioner allegedly used. Additionally, there was no evidence or facts to support the toxicologist's opinion. Had trial counsel provided an expert witness, the witness' testimony would have impeached the toxicologist's testimony and given the jury an alternative to consider and the outcome of the trial would have been different. This failure by trial counsel constituted ineffective [ ] assistance of counsel pursuant to *Strickland.*

(h)     Trial counsel failed to investigate, obtain, and present evidence that Petitioner suffers from bipolar manic depression, which he was diagnosed with in 1988 and was taking medication for at the time of the accident. Additionally, Petitioner had been examined by and was receiving benefits from both the Social Security Administration and the Veterans Administration for this disorder since 1997. Had trial counsel presented said evidence it would have assisted in explaining any erratic behavior the Petitioner exhibited following the accident and provided the jury with a logical explanation of Petitioner's actions following the accident. This

failure by trial counsel to introduce said evidence constituted ineffective [] assistance of counsel pursuant to *Strickland.*

(i)     Trial counsel also failed to offer an expert witness to explain how bipolar manic depression effects a person's behavior, attitude, and ability to take directions and perform specific tasks. The expert's testimony would have explained the Petitioner's demeanor at the time of the accident, why he performed the field sobriety tests quickly, and why he seemed excited. Had trial counsel presented offered [sic] an expert witness for testimony, it would have given the jury an alternative to consider regarding Petitioner's actions at the accident scene and would have raised reasonable doubt as to Petitioner's alleged intoxication and the outcome of trial would have been different.

(j)     Trial counsel failed to protect Petitioner's due process rights when counsel advised Petitioner to withdraw his *pro se* motion for a new trial and notice of appeal. At the motions hearings on September 29, 2010, trial counsel advised the court "we'll withdraw that" and trial counsel withdrew Petitioner's *pro se* motion for a new trial. This constituted ineffective assistance of counsel because this was not a "tactical" or "strategic" decision based on a reasonable investigation into the matter. Additionally, the motion was not without merit and should have been heard by the court as it contained non-frivolous issues. It was also in Petitioner's best interest to have these issues addressed and by withdrawing the motion, trial counsel violated Petitioner's 14th Amendment right to due process of law and Petitioner's 6th Amendment right to the effective assistance of counsel. Had trial counsel left the motion for new trial on the docket to be heard, it would have protected Petitioner's right to due process and allowed Petitioner to address the merits of his conviction on direct appeal.

(k)     Counsel failed to communicate with Petitioner when preparing and filing the reply brief to the State's appeal. Trial counsel did not consult with Petitioner about the said brief nor did counsel allow Petitioner to review the brief before it was filed. This action was inappropriate because Petitioner had the right to review the brief his attorney had prepared on his behalf before it was filed. This allows the Petitioner to actively participate in his own defense by allowing a criminal defendant to agree with what is being filed on his behalf. It is not a strategic or

13

tactical decision to file a reply brief without consulting with the Petitioner first and it is not feasible to believe that there was any reason trial counsel could not have allowed Petitioner to review the reply brief before it was filed. Trial counsel had Petitioner's contact information at all times during the course of his representation of Petitioner. Had trial counsel communicated with Petitioner and allowed Petitioner to review the reply brief before it was filed Petitioner would have requested that counsel amend the brief prior to its filing. However, trial counsel failed to do so. Petitioner never consented to what counsel filed and wanted the merits of his conviction addressed in the reply brief. Trial counsel's failure to communicate with Petitioner allowed Petitioner's due process rights to be violated and was ineffective assistance of counsel according to *Evitts v. Lucey*, 469 U.S. 387 (1985). Trial counsel's ineffectiveness prejudiced the Petitioner by causing him to be procedurally barred from raising any issues concerning the merits of Petitioner's conviction.

The State initiated the first direct appeal in this case, but that did not prevent the Petitioner from raising issue regarding sufficiency of the evidence in his reply brief. See Tenn. R. App. P. 27(h) ("'if appellee is also requesting relief from the judgment, the brief of the appellee shall contain the issues and arguments involved in his request for relief as well as the answer to the brief of the appellant.[']['']); see also *State v. Watkins,* 804 S.[W].2d 884, 886 (Tenn. 1991) (deeming the filing of a separate cross-appeal "unnecessary" to preserve an issue for appeal when the issue was "properly ... raised in the ... reply brief"). As the State observes, and Petitioner concedes, the Court of Criminal Appeals has held that a defendant's failure to raise issues in a first appeal results in a waiver of those issues in a subsequent appeal. See *State v. Ronnie Henry,* 2009 Tenn. Crim. App. LEXIS 825, *7 (Tenn. Crim. App., Jackson, Sept. 28, 2009). The Court of Criminal Appeals held in Petitioner's second appeal as follows: "Because the defendant's challenge to the sufficiency of the convicting evidence is procedurally barred and because the defendant does not challenge the propriety of the sentence imposed on remand, we affirm the judgment of the trial court." See *State v. Charles Bradford Stewart,* 2013 Tenn. Crim. App. LEXIS 994, Case No. M2013-00488[-]CCA-R3-CD (Tenn. Crim. App. November 18, 2013). As previously set forth herein, this failure by trial counsel to preserve Petitioner's rights on appeal constituted ineffective assistance of counsel pursuant to *Strickland.*

14

(l)     Trial counsel failed to subpoena Ms. Leeman for trial or obtain a deposition from her to explain her role in the accident and her version of how the accident occurred. Ms. Leeman was in the process of turning when the left front of Petitioner's vehicle made contact with the right rear bumper of Ms. Leeman's vehicle. Ms. Pamela Jones-Sanders testified that Ms. Leeman's vehicle was moving immediately before the accident occurred. Trial counsel['s] failure to subpoena Ms. Leeman for trial to show her involvement in the accident was prejudicial to Petitioner's defense and constituted ineffective assistance of counsel pursuant to *Strickland*.

(m)     Trial counsel failed to cross-examine Cynthia Mallard. Trial counsel should have cross-examined Ms. Mallard to obtain facts regarding her actions and contributions to the accident and for impeachment purposes. Ms. Mallard testified that her vehicle was hit and that she did not see another vehicle in front of her before the accident occurred. Ms. Mallard's testimony at trial essentially indicated that she really did not know what happened the day of the accident, except that she was in an accident. Had trial counsel properly investigated the case, examined the photos of the accident, and cross-examined Ms. Mallard at trial concerning these matters, it would have impeached her testimony and provided the jury an alternative to consider and the outcome of the trial would have been different.

19.     There was no evidence that the Petitioner was intoxicated and no evidence establishing a connection between Petitioner's alleged intoxication and the injuries caused by the accident. A detectable amount of cocaine or any other substance that is found in a person's blood does not establish that the person was intoxicated. See T.C.A. § 39-13-106. The presence of a substance in a person's system does not establish criminal liability and instead criminal liability is based upon establishing that a person is intoxicated by a substance. The State presented evidence that cocaine was detected in the Petitioner's blood sample, but did not

15

prove Petitioner was intoxicated at the time of the accident. There was no evidence quantifying the alleged amount detected and the State presented no evidence regarding the possible effects of cocaine on a person's ability to operate a motor vehicle.

Officer Caver testified that Petitioner was excited, but also testified that Petitioner passed all the field sobriety tests. Therefore, Officer Caver did not find evidence to support probable cause to arrest the Petitioner for driving under the influence. The statute requires the State to prove that intoxication was the proximate cause of the accident, which the State clearly failed to do in the present case. Accordingly, the convictions should be overturned and Petitioner awarded a new trial.

20. There is no record of Petitioner driving in an intentionally hostile manner. Petitioner was simply traveling in the turning lane preparing to turn left onto Ringgold Road in Clarksville, Tennessee. The evidence failed to establish that Petitioner['s] manner of use of his vehicle made it a deadly weapon and the record at trial does not indicate that Petitioner was speeding, veering violently, or engaging in any reckless conduct or that Petitioner gave no thought to the safety of his fellow motorist[]s during the period leading up to the accident. Further, Petitioner was not cited for violation of T.C.A. §§ 55-8-140(5)(B) or 55-8-140(5)(D) because Petitioner was using the left turn lane in accordance with the

16

aforementioned statutes. Petitioner was preparing to turn left and Petitioner was within a safe distance from where he was going to turn. Accordingly, the record and evidence introduced at trial did not support the guilty verdict in the present case and had trial counsel presented these facts in Petitioner's reply brief, then the outcome of the State's appeal would have been different.

21.     Trial counsel's errors should be examined in the cumulative error light. When the cumulative effect of errors in a trial casts doubt on the reliability of a verdict, relief is warranted.  See *Taylor* v. *Kentucky*[,] 436 U.S. 478, 487-88[ ] (1978) (holding that "the combination of the skeletal [jury] instructions, the possible harmful inferences from the references to the indictment, and the repeated suggestions that petitioner's status as a defendant tended to establish his guilt created a genuine danger that the jury would convict [him] on the basis of those extraneous considerations, rather than on the evidence introduced at trial"); see also *State* v. *Zimmerman,* 823 S.W.2d 220, 228 (Tenn. Crim. App. 1991). In the present case, when the totality of trial counsel's errors as previously set forth herein are examined in the cumulative error light, relief is warranted.

It is therefore **ORDERED, ADJUDGED, and DECREED** that Petitioner's convictions are hereby reversed and a new trial is ordered.

**ENTERED,** this 20th day of November, 2015.

John H. Gasaway, III, Circuit Court Judge

We now summarize the testimony elicited at the post-conviction hearing, which is contained in fifty-four (54) pages of transcript.

Petitioner testified that trial counsel represented Petitioner at a jury trial wherein he was convicted of vehicular assault and reckless aggravated assault. The reckless aggravated assault conviction was merged with the vehicular assault conviction. Petitioner was sentenced to serve twelve years. Petitioner filed a motion for new trial and a notice of appeal. Trial counsel advised Petitioner to withdraw the motion for new trial because Petitioner's issues on the merits of the case could be addressed in the reply brief in the State's appeal of the sentencing ruling. Petitioner appeared in open court and withdrew the motion for new trial and the notice of appeal.

Subsequently, Petitioner received a copy of the brief filed by trial counsel, and the only issue argued regarded the State's appeal of the sentence. The issues in the withdrawn notice of appeal were not addressed. Petitioner stated that when asked by Petitioner why the other issues were not raised, trial counsel said, "the only thing that [trial counsel] could address was the type of sentencing because that's all the State was appealing." The split confinement sentence with one year of incarceration and eleven years of service in community corrections was reversed, and at a subsequent sentencing hearing where he was represented by trial counsel, Petitioner received the sentence of twelve years of incarceration.

Petitioner testified that trial counsel met with Petitioner four to five times prior to trial during a span of approximately five years. Petitioner said trial counsel conveyed the State's offer to settle the case with a sentence of six years, but Petitioner declined to accept it. Petitioner said trial counsel told him he would be sentenced to Range II. Petitioner said he thought he was only facing eight years when he turned down a sentence of six years.

Petitioner testified that he never gave trial counsel the names of any witnesses that Petitioner wanted called at trial. Petitioner said that he and trial counsel discussed medications Petitioner was taking and that Petitioner's blood sample was no longer available.

Petitioner testified that his blood sample was the result of an unconstitutional search and seizure because Officer Caver did not have "reasonable grounds to believe

18

that I was under the influence because I passed a field sobriety test that – that he [Officer Caver] administered." Petitioner further asserted that Officer Caver did not arrest Petitioner the day of the wreck, and thus Officer Caver did not have reasonable grounds to request Petitioner to submit to a blood test. Petitioner stated that trial counsel rendered deficient representation by not moving to suppress the blood test results on this basis.

Petitioner testified that according to the toxicology report issued by the Tennessee Bureau of Investigation (TBI), the blood sample was destroyed before Petitioner was arrested in May 2005. However, Petitioner testified later that "they said it was destroyed August of 2005." Petitioner claimed the toxicology report was "illegal evidence" because he was unable to have an expert examine the blood sample and because the chain of custody of the blood sample was questionable. Petitioner's testimony about who handled the sample and the problems associated with it can best be explained by quoting his testimony.

> Q. And describe the chain of custody as you understood it occurred in this case, Mr. Stewart.
>
> A. Well, the blood sample goes to the lab; it's - - it's issued a travel number and a chain of evidence custody report that goes along with it. Everybody that handles that evidence looks at it, takes tests on it, and they have to put it on that report where it's gone, who has it and who handles it.
>
> All right. Now, this - - up and until Ms. Kirk - - I think it was Dabney Kirk to Ms. Swiney, who did the alcohol blood test of it, shows that she took it out of her - - from Ms. Kirk and she put it in her refrigerator, then she relinquish - - to her refrigerator, relinquished it to her, and she had it out. But she kept it for 32 days. And after those 32 days we don't know where the blood sample's at. And 32 - - she said in her testimony that she kept it all - - kept it in her possession, but for 32 days is highly unlikely to believe it was in her possession.
>
> And that's very significant, because it was the next officer - - or the next person in the chain of custody who - - who found the alleged cocaine in the blood sample. So I think that during that time we can - - you know, we don't know where the sample was and that's a compromised sample.

19

As to the allegations of ineffective assistance of counsel, Petitioner discussed trial counsel's failure to file motions to suppress the results of the testing on his blood sample and his failure to require the State to provide the sample for independent testing.

Petitioner's theories to suppress the results of the blood test were that the statutory "implied consent" for taking blood samples was not followed because: Officer Caver did not have reasonable grounds to believe Petitioner was under the influence of alcohol or drugs; Petitioner was not in custody or under arrest; and Officer Caver was not the arresting officer, he was only the investigating officer.

Petitioner testified that trial counsel also rendered ineffective assistance of counsel because he did not file a motion to dismiss the count of the indictment charging reckless aggravated assault. Petitioner asserted that the motion would have merit because the evidence of the distance he drove in the turn lane was wrong, and there was nothing in the record that Petitioner acted recklessly or violently or was speeding or swerving.

Petitioner claimed ineffective assistance of counsel by trial counsel's failure to cross-examine a paramedic regarding whether cocaine would dilate pupils. Petitioner testified that his pupils were constricted according to the police officer, and since cocaine causes pupils to dilate, it would prove he was not intoxicated if a qualified witness could testify to this fact.

Petitioner also testified that trial counsel failed to present exculpatory evidence at trial. Specifically, trial counsel failed to request Officer Caver's Uniform Traffic Crash Report to be admitted into evidence. Petitioner testified that the report stated that Petitioner appeared normal and there were no contributing actions by him in causing the wreck. However, even though Petitioner testified that he received a copy of Officer Caver's report from trial counsel, the report was not submitted as evidence at the post-conviction hearing, and Officer Caver was not called as a witness at the post-conviction hearing.

Petitioner also testified about some photographs that he claimed were exculpatory evidence available to trial counsel, but not presented at trial. Again, it is best to quote Petitioner's testimony to explain his thoughts on why these photographs contained exculpatory evidence:

> You know, and, you know, that - - the one - - and - - and some pictures of the front end of my vehicle showing me sitting in the - - if the turning lane, not over here to the right like they claimed where I'd hit her, knocked her into - - she was already in oncoming traffic, it proves - -

20

it - - it would - - it would impeach the testimony and the - - and the story of the officer of how things happened.

Petitioner testified that trial counsel, in closing arguments to the jury, stated the "things that Officer Caver talked about pointed to probable cause." Petitioner asserted that none of the things Officer Caver testified about "pointed to probable cause." Petitioner stated that trial counsel told the jury that Petitioner was "in the turning lane from the bridge to where the accident happened," but "it's nowhere in the record that it was said that way." Petitioner testified that trial counsel's closing argument "made me look intoxicated or reckless."

Petitioner testified that trial counsel rendered ineffective assistance of counsel by failing to investigate in order to present evidence to impeach and challenge the State's proof regarding the charge of reckless aggravated assault. In the words of Petitioner,

Well, that's what I was about before, there is nothing in the record about me being in the turning lane. I crossed the bridge, I come up the hill, I was going to turn left. I got in the turning lane to turn left and I lit a cigarette; I dropped the cigarette lighter, look back up, this vehicle was already turning when I looked back up she had stopped; I hit my brakes, I tried to miss her. The brake - - the skid marks will show it. That's also something that was not shown to the jury, those.

And there's nothing in the record to prove any reckless act - - any recklessness. There's nothing showing that I - - that I - - that I had disregarded any - - any - - anybody's safety by - - to the wreck. It was just simply a car wreck.

Petitioner testified that trial counsel failed to present the testimony of an expert witness to challenge the testimony of the toxicologist who testified for the State that cocaine can be detected in the blood for three hours. Petitioner testified of his own knowledge that cocaine can be detected up to twelve hours, and that cocaine "only keeps you high for roughly 15 to 20 minutes."

Petitioner stated that he is bipolar, manic depressive and ADHD. He testified that the trial counsel rendered ineffective assistance because he failed to introduce evidence of these conditions to explain his conduct, nervousness, statements, etc. at the wreck scene to refute the inference that he was under the influence of cocaine.

Petitioner's testimony about trial counsel's advice to withdraw his motion for new trial was that he was procedurally barred from raising the issues in that motion for new

21

trial after the State's appeal was decided. The motion for new trial that was withdrawn by Petitioner was not presented at the post-conviction hearing and the issues contained in it were not specifically stated by Petitioner in his testimony. Petitioner did not indicate that the procedurally late motion for new trial filed by trial counsel after the first appeal brought up "some of the issues that I wanted brought up in the appellate brief."

Petitioner testified that trial counsel rendered ineffective assistance of counsel by failing to subpoena Ms. Leeman, the driver of the pick-up truck hit by Petitioner, causing Ms. Leeman's vehicle to strike Ms. Mallard's vehicle. Although Petitioner testified as to what he thought Ms. Leeman could testify to, he admitted that he had never talked to Ms. Leeman.

Petitioner testified that trial counsel rendered ineffective assistance by not cross-examining Ms. Mallard, the victim in the vehicular assault case. Petitioner acknowledged that Ms. Mallard testified that she did not remember anything and did not know anything except that she was in a wreck. Ms. Mallard was not called by Petitioner to testify at the post-conviction hearing.

Petitioner testified that his appellate counsel, who represented him in the second appeal, rendered ineffective assistance of counsel because, as noted in the appellate court's opinion, appellate counsel conceded that the issue of insufficient evidence to sustain the conviction was likely barred by the failure to raise it in the first direct appeal. Petitioner testified that appellate counsel should have said, "the petitioner [sic] should be heard due to the ineffective assistance of counsel while [sic] his merits [sic] were not heard." Petitioner testified that by just giving up, appellate counsel was ineffective.

Petitioner closed out his direct testimony by asserting that trial counsel rendered ineffective assistance of counsel as shown by all of trial counsel's errors being considered cumulatively.

During cross-examination, Petitioner testified that after his trial, he had not received his medications and he was "stressed." As a result, he filed his *pro se* motion for a new trial. Afterward, in Petitioner's words, he "got medicated somewhat and knew that the motion was not needed." Petitioner acknowledged that he caused the wreck which caused Ms. Mallard to be injured, that the trial court had given him a "fair and impartial ruling" by granting a sentence of split confinement, and that the motion for new trial was "not needed." Petitioner admitted that it was his request for the motion for new trial to be withdrawn, and that he was competent and sane when he did so. Petitioner added that he withdrew the motion "on the behest of my attorney who told me to do so." Petitioner admitted that when his second motion for new trial, filed after he had been resentenced as per directions of the appellate court, was heard, the trial court considered

22

whether there was sufficient evidence to support the conviction and ultimately held against Petitioner.

Even though the trial court's order granting post-conviction relief did not summarize trial counsel's testimony, we will summarize that testimony herein. Called by Petitioner, trial counsel testified that he had been practicing law about forty-two years at the time of the post-conviction hearing. Petitioner first came to see trial counsel in May 2005. Trial counsel stated that he met with Petitioner "a number of times" prior to the trial in 2010. At the time of the post-conviction hearing in 2015, trial counsel could not recall any details of an offer from the State for a negotiated plea agreement, nor could he recall the details of discussions with Petitioner on his sentencing range exposure. Trial counsel recalled that Petitioner had voluntarily agreed to have his blood sample drawn. Trial counsel remembered filing a motion concerning the blood test, and it had been denied. He did not recall any discussion with Petitioner about filing a motion to dismiss the aggravated assault count of the indictment.

Trial counsel could not recall the paramedic's testimony. He also could not recall any discussion with Petitioner about using exculpatory evidence from "an accident report." Trial counsel testified that he did not recall discussing Officer Caver's testimony during closing arguments nor discussing with Petitioner whether to call an expert witness to impeach the toxicologist who testified for the State.

Trial counsel did not recall having any discussions with Petitioner as to what issues would be addressed in Petitioner's brief in the first direct appeal. Trial counsel agreed that strategy-wise, it was best to just argue against reversing the split-confinement sentence and not to address any other issue.

Trial counsel testified that he attempted to locate Ms. Leeman prior to trial, but could not locate her. Trial counsel felt that he obtained at least one trial continuance because of the inability to locate Ms. Leeman. When asked why he did not cross-examine the victim, Ms. Mallard, trial counsel testified that it was "a real judgment call." Because she had been severely injured, limped to the witness stand, and there was no certainty on what she might say, trial counsel felt that it was in Petitioner's best interest that Ms. Mallard not be cross-examined. Trial counsel concluded direct examination by testifying that he had effectively represented Petitioner pre-trial, during the trial, and on the first appeal.

During cross-examination, trial counsel testified that he challenged the chain of custody during trial. He also testified that he did not file a motion to suppress the blood test results on the basis of an improper request by Officer Caver. Trial counsel stated that there were some field sobriety tests, Petitioner was "wringing his hands," his eyes were

dilated, Petitioner was not handcuffed or arrested, and Petitioner was asked if he would take a blood test and Petitioner said "yes."

The proof at the evidentiary hearing concluded after cross-examination of trial counsel, without any exhibits entered into evidence.

## ANALYSIS

In a post-conviction proceeding, the burden is on the petitioner to prove his factual allegations for relief by clear and convincing evidence. T.C.A. § 40-30-110(f); *see Dellinger v. State*, 279 S.W.3d 282, 293-94 (Tenn. 2009). On appeal, we are bound by the trial court's findings of fact unless we conclude that the evidence in the record preponderates against those findings. *Mobley v. State*, 397 S.W.3d 70, 80 (Tenn. 2013). Additionally, appellate courts generally defer to the post-conviction court's findings concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence. *Id.* Because they relate to mixed questions of law and fact, we review the trial court's conclusions as to whether counsel's performance was deficient and whether that deficiency was prejudicial under a de novo standard with no presumption of correctness. *Id.*

In order to prevail on an ineffective assistance of counsel claim, the petitioner must establish that (1) his lawyer's performance was deficient and (2) the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). "[A] failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component." *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996) (citing *Strickland*, 466 U.S. at 697). A petitioner successfully demonstrates deficient performance when the evidence proves that his attorney's conduct fell below "an objective standard of reasonableness under prevailing professional norms." *Id.* at 369 (citing *Strickland*, 466 U.S. at 688; *Baxter*, 523 S.W.2d at 936). Prejudice arising therefrom is demonstrated once the petitioner establishes "'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* at 370 (quoting *Strickland*, 466 U.S. at 694).

Furthermore, this Court has stated,

It is well settled that when a [p]etitioner in post-conviction proceedings asserts that counsel rendered ineffective assistance of counsel by failing

to call certain witnesses to testify, or by failing to interview certain witnesses, these witnesses should be called to testify at the post-conviction hearing; otherwise, [p]etitioner asks the Court to grant relief based upon mere speculation. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. 1990).

*Terrance Cecil v. State*, No. M2009-00671-CCA-R3-PC, 2011 WL 4012436, at *8 (Tenn. Crim. App. Sept. 12, 2011).

The same standard is applicable whenever a petitioner asserts that trial counsel rendered ineffective assistance of counsel by failing to file and present a pre-trial motion to suppress evidence. It is a petitioner's burden to submit evidence (and not just his testimony surmising on the merits of a pre-trial suppression motion) that the suppression motion would have been granted and that there is a reasonable probability that the trial proceedings would have concluded differently if trial counsel had pursued a motion to suppress evidence. *Id*.; citing *Vaughn v. State*, 202 S.W.3d 106, 120 (Tenn. 2006).

"In essence, the petitioner should incorporate a motion to suppress within the proof presented at the post-conviction hearing." *Terrance Cecil,* 2011 WL 4012436, at *8; *See also Joe Travis Northern, Jr. v. State*, No. W2016-01058-CCA-R3-PC, 2017 WL 1508185 at *8 (Tenn. Crim. App. Apr. 25, 2017); *Willie C. Cole v. State*, No. M2016-00625-CCA-R3-PC, 2017 WL 809943 at *5 (Tenn. Crim. App. Mar. 1, 2017); *Timothy Richard Singleton v. State*, No. M2015-02319-CCA-R3-PC, 2016 WL 6069231 at *9 (Tenn. Crim. App. Oct. 17, 2016) *perm. app. denied* (Tenn. Jan. 19, 2017); *Willie Gatewood v. State*, No. 2015-02480-CCA-R3-PC, 2017 WL 696850 at *5-6 (Tenn. Crim. App. Feb. 17, 2017).

On appeal, the State argues that the post-conviction court erred by granting relief to Petitioner because (1) Petitioner failed to present evidence proving prejudice pursuant to *Strickland*, and/or failed to present "competent evidence" in support of the grounds for relief determined by the post-conviction court. Petitioner argues that the post-conviction court did not err. Both parties argue the issue by examining each separate ground for relief determined by the post-conviction court.

We will examine each separate ground for relief determined by the post-conviction court in the chronological order the grounds are set forth in the post-conviction court's order. Notwithstanding the post-conviction court's designation FINDINGS OF FACT for items 1 through 15, items 1 through 14 are more like a procedural history statement of the case from the day of the conduct (wreck) through the post-conviction evidentiary hearing.

25

It is necessary to point out, because it is crucial to our analysis of this case, that item 15 states "At the evidentiary hearing, **Petitioner testified as follows**:" (emphasis added). Sub-items (a) through (d), with three sub-parts to 15(c) and twelve sub-parts to 15(d), by the very language used by the post-conviction court, are merely a *summary* of Petitioner's testimony. The matters discussed in item 15 are *not* findings of facts by the post-conviction court to support Petitioner's claim on appeal that the post-conviction court properly granted Petitioner relief. *Only* what is set forth in items 18 through 21 can be considered as findings of fact relevant to the issue of ineffective assistance of counsel. Accordingly, our analysis is limited to a review of items 18 through 21 to determine if both prejudice and deficient performance occurred by trial counsel's actions or inactions, keeping in mind we must determine whether the evidence at the hearing preponderates against the post-conviction court's factual findings.

*Item 18(a)* - The State argues that the post-conviction court erred by concluding that trial counsel rendered ineffective assistance of counsel by failing to file a motion to suppress evidence of the toxicology results of Petitioner's blood showing that Petitioner had cocaine in his blood. The post-conviction court concluded that under *State v. Ferguson*, 2 S.W.3d 912 (Tenn. 1999), because the State's T.B.I. lab ultimately destroyed the blood, a suppression motion would have been granted, "*and the indictment would have been dismissed.*" (emphasis added). The State asserts that in *State v. Leath*, 461 S.W.3d 73, 98 (Tenn. Crim. App. 2013) this Court held that the rule in *Ferguson* does not apply to blood tests like the one in Petitioner's case. Whether *Leath* applies or not, there is absolutely no evidence in the record that trial counsel's inaction resulted in prejudice to Petitioner. There is no proof of what evidence could have been developed in a pre-trial *Ferguson* hearing. *See Black,* 794 S.W.2d at 757*; Terrance Cecil,* 2011 WL 4012436, at *8. As noted in the post-conviction court's order granting relief, various factors *must* be considered. *Ferguson*, 2 S.W.3d at 917. Petitioner was not entitled to post-conviction relief under item 18(a).

*Item 18(b)* - Again, Petitioner did not present proof of what would have been developed in a motion to suppress evidence of the results of the toxicology test. The post-conviction court made no findings of fact in support of this ground for relief. Petitioner was not entitled to post-conviction relief under item 18(b).

*Item 18(c)* - Petitioner did not present Paramedic Hightower at the post-conviction evidentiary hearing to testify as to her opinion on the effects of cocaine on a user's pupils. Therefore, no prejudice to Petitioner could be established. *Black*, 794 S.W.2d at 757. Petitioner was not entitled to relief under item 18(c).

*Item 18(d)* - For the same failures as above, where Petitioner did not submit the Traffic Crash Report or call Officer Caver as a witness to explain information in the

report, it is pure speculation to conclude, as did the post-conviction court, that "had trial counsel used the report to impeach the testimony of Officer Caver it would have raised reasonable doubt that Petitioner acted recklessly or was intoxicated." Petitioner was not entitled to relief in item 18(d) because there is no evidence of prejudice to Petitioner. *Id.*

*Item 18(e)* - First, the post-conviction court made no explicit findings of fact in its order as to the statement(s) made by trial counsel during closing arguments. We note that in the post-conviction court's summary of Petitioner's testimony, the Court stated only that Petitioner testified "[t]rial counsel prejudiced the Petitioner with statements to the jury in counsel's closing argument by misquoting Officer Caver." See item 15(d)v, post-conviction court's order granting relief. In any event, we have reviewed trial counsel's entire closing argument, and found nothing to suggest ineffective assistance of counsel. Petitioner was not entitled to relief under item 18(e).

*Item 18(f)* - The post-conviction court granted relief on the basis of trial counsel's failure to investigate and present evidence to challenge proof of reckless aggravated assault and to impeach the "State's statements." However, the post-conviction court cited no facts that existed which trial counsel failed to present. There is absolutely nothing in the findings of the post-conviction court to support granting post-conviction relief under item 18(f).

*Item 18(g)* - The post-conviction court erred by granting post-conviction relief under item 18(g) on the basis that trial counsel failed to present an expert witness to impeach the toxicologist called by the State. Petitioner did not present an expert witness at the evidentiary hearing, and therefore failed to prove prejudice. *Black*, 794 S.W.2d at 757. Petitioner's testimony on this precise issue could not show he was prejudiced because Petitioner was not qualified as an expert witness on the matter at the evidentiary hearing.

*Items 18(h) and (i)* - Again, the post-conviction court erred by granting post-conviction relief on the basis of trial counsel's failure to present evidence of Petitioner's "bipolar manic depression," when none of the medical records or testimony of a witness to interpret the records was presented at the evidentiary hearing. No proof of prejudice to Petitioner was established. *Id.* Likewise, it was error to grant post-conviction relief on the basis that trial counsel failed to offer an expert witness at trial to testify and explain how bipolar manic depression affects a person to rebut evidence presented by the State that Petitioner was intoxicated. No evidence of prejudice was shown. *Id.*

*Item 18(j)* - Petitioner failed to offer into evidence at the evidentiary hearing the *pro se* motion for new trial that he withdrew before it could be heard. Petitioner did not testify at the evidentiary hearing as to any of the grounds that were alleged in his *pro se*

27

motion for new trial. He testified at the evidentiary hearing that he was sane and competent and wanted the motion withdrawn. The post-conviction court found in its order that the motion for new trial "was not without merit and should have been heard by the court as it contained non-frivolous issues," but made no finding of what the issues were that led to the stated conclusion. Petitioner should not have been granted post-conviction relief under item 18(j) because he failed to establish evidence of prejudice, *id.* and the record contains no facts to support deficient performance by trial counsel in advising Petitioner to withdraw his *pro se* motion for new trial.

*Item 18(k)* - Assuming that the record establishes that trial counsel rendered deficient performance by not consulting with Petitioner prior to filing the appellee brief on behalf of Petitioner in the first direct appeal, prejudice could only be shown if Petitioner would have been granted relief because the evidence was insufficient to support the conviction of vehicular assault. As stated in the discussion on item 18(j), Petitioner did not prove what issues were in his *pro se* motion for new trial, and therefore prejudice cannot be shown because of trial counsel's failure to raise issues which must be raised in a motion for new trial for plenary review. *See* Tenn. R.App. P. 3(e) ("[I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.")

However, a challenge to the sufficiency of the evidence can be raised on appeal even if no motion for new trial is filed. *State v. Boxley*, 76 S.W.3d 381, 390 (Tenn. Crim. App. 2001) (By failing to file a timely motion for new trial Defendant has waived his right to appeal any of the issues he raised in his motion for new trial other than sufficiency of the evidence and sentencing). We have reviewed the record of the trial proceedings and agree with the State that there was sufficient evidence presented, taken in the light most favorable to the State, to support the conviction for vehicular assault. That conviction is the only one presently existing because the conviction for reckless aggravated assault was merged with the vehicular assault conviction, and that is now a final judgment.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). The appellate court determines "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). In determining the sufficiency of the evidence, this court does not

28

reweigh or reevaluate the evidence. *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004). Instead, this court affords the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences that may be drawn from that evidence. *State v. Elkins*, 102 S.W.3d 578, 581 (Tenn. 2003). "A guilty verdict by the jury, approved by the trial court, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). The conviction replaces the presumption of innocence with a presumption of guilt, and the accused has the burden of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).

This court applies the same standard of review regardless of whether the conviction was predicated on direct or circumstantial evidence. *State v. Dorantes*, 331 S.W.3d 370, 381 (Tenn. 2011). "Circumstantial evidence alone is sufficient to support a conviction, and the circumstantial evidence need not exclude every reasonable hypothesis except that of guilt." *State v. Wagner*, 382 S.W.3d 289, 297 (Tenn. 2012).

"A person commits vehicular assault who, as the proximate result of the person's intoxication as set forth in § 55-10-401, recklessly causes serious bodily injury to another person by the operation of a motor vehicle." T.C.A. § 39-13-106 (2003). A person commits reckless aggravated assault when he or she "[r]ecklessly commits an assault as defined in § 39-13-101(a)(1), and the assault: (i) [r]esults in serious bodily injury to another; (ii) [r]esults in the death of another; (iii) [i]nvolved the use or display of a deadly weapon; . . ." T.C.A. § 39-13-102(a)(1)(B). Tennessee Code Annotated section 39-13-101(a)(1) defines assault as when a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another."

As noted above, when determining the legal sufficiency of the evidence to support a conviction, the proof introduced at trial must be viewed in the light most favorable to the State. It cannot be viewed in the light most favorable to a defendant. A defendant's different conclusions and opinions of what the evidence showed is for consideration by the trier of fact in the trial. Such opinions by a defendant are not a consideration for the appellate court.

After reviewing the evidence submitted at the trial, taken in the light most favorable to the State, we conclude that the evidence was sufficient to sustain the conviction of vehicular assault and the conviction of reckless aggravated assault, which was ultimately merged with vehicular assault.

Officer Caver's testimony, including exhibits admitted into evidence, showed that Petitioner drove his vehicle for approximately one-half mile in a turn lane prior to

29

striking Ms. Leeman's pick-up truck in its rear end. Skid marks from Petitioner's tires were less than ten feet long, indicating that Petitioner did not apply his brakes until just before the collision. Petitioner hit Ms. Leeman's truck with enough force to cause it to go airborne and land directly in front of Ms. Mallard's van, which was traveling in the oncoming lane of traffic. Ms. Mallard suffered serious bodily injuries: a complete fracture of her left femur, a broken ankle, and a fractured hip. At the time of the trial, she had had four surgeries as a result of her injuries, and would have to have hip replacement surgery in the future. A bone had been "sawed" resulting in her left leg being two inches shorter than the right leg. She was unable to walk for one and one-half years after the wreck.

A witness to the wreck talked with Petitioner at the scene. Petitioner did not understand what had happened. Petitioner appeared "like he was in another world" and looked like "he was on something."

Officer Caver testified that at the scene Petitioner appeared "excited," nervous, and intoxicated. Petitioner asked Officer Caver multiple times: "Are we done?"; "Are we done yet?"; "Can I go?". During the times that Officer Caver was directly communicating with Petitioner, Petitioner was constantly "balling" his hands up and making fists. Petitioner could not find his vehicle registration or a document showing that he had insurance and went to the trunk of his car to search for these documents. The trunk contained what appeared to Officer Caver to be garbage: empty food bags, old papers, and discolored papers. Petitioner searched the trunk for a while without having found his vehicle registration or proof of insurance and looked back and asked Officer Caver, "Are we done yet, can I go?" Petitioner never found the vehicle registration or proof of insurance.

Officer Caver could not detect alcohol on Petitioner, but, suspicious that Petitioner's conduct meant "there was something else going on," he had Petitioner perform field sobriety tests. In the walk and turn test, Petitioner exhibited two "clues": he could not maintain his balance during the instruction stage, and he did not make the turn as he had been instructed and had to step to the side to maintain his balance in the turn. Petitioner also counted quickly in the walking portion.

In the one-leg stand test, Petitioner did not count as instructed, i.e., "one thousand one, one thousand two," etc., but instead counted "1, 2, 3, 4," etc. This was also a "clue." Officer Caver testified that he often saw that people who count fast during the field sobriety tests are under the influence of a stimulant. Petitioner agreed to submit to a blood test. After being analyzed, the blood was found to contain cocaine. The forensic toxicologist stated that cocaine has a short half-life in blood and that to detect it in the blood meant that the cocaine was ingested within three hours. The wreck was at

approximately 3:00 p.m., and the blood sample was taken from Petitioner at approximately 5:00 p.m., meaning that Petitioner ingested the cocaine within one hour before the wreck. The jury could reasonably conclude and find that Petitioner's rather bizarre behavior after the wreck, his driving in a turn lane for one-half mile, and his failure to realize he was running up on Ms. Leeman's vehicle until he was less than ten feet away, was indicative of the fact he was under the influence of cocaine when he caused the major traffic collision.

The evidence clearly established Petitioner's guilt of both offenses, and the post-conviction court erred by granting relief to Petitioner based upon trial counsel's failure to challenge sufficiency of the evidence in the first appeal.

*Item 21* - The post-conviction court erred by granting post-conviction relief because of "trial counsel's errors" in the "cumulative error light." We have examined the allegations of ineffective assistance of counsel and found that Petitioner failed to submit evidence of prejudice. Without any proof of prejudice, there is no "cumulative" error by trial counsel that can entitle Petitioner to relief. Petitioner was not entitled to post-conviction relief based on "cumulative errors" of trial counsel.

## CONCLUSION

Having done an exhaustive review of the post-conviction record and the trial record, we conclude that the post-conviction court erred by granting post-conviction relief. Accordingly, the judgment of the post-conviction court is reversed, and the judgment of conviction is reinstated.

_____
THOMAS T. WOODALL, PRESIDING JUDGE